IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

ZACHARIE M. MCDONALD,           )
                                )
                    Plaintiff,  )
                                )
v.                              )        Case No. 14-00553-CV-W-SWH
                                )
ZURICH AMERICAN INSURANCE       )
COMPANY,                        )
                                )
                    Defendant.  )

ORDER

On May 16, 2014, plaintiff Zacharie M. McDonald filed suit in the Circuit Court of

Jackson County, Missouri, against defendant Zurich American Insurance Company for equitable

garnishment, pursuant to § 379.200 RSMo.  The action was removed to this court on June 19,

2014.

On January 7, 2015, defendant filed a Motion for Summary Judgment (doc #17).

Defendant argues that it is entitled to judgment for two reasons:  (1) plaintiff's equitable

garnishment action is defective because Justin Jenkins is not named as a defendant as required by

Missouri's equitable garnishment statute; and (2) Mr. Jenkins was not insured under the policy

because he was not acting within the course and scope of his employment at the time of the

accident and was not, therefore, a permissive user of the van.  (Defendant's Suggestions in

Support of Its Motion for Summary Judgment (doc #18) at 14)

In addition to responding to defendant's motion for summary judgment (doc #26), plaintiff

has filed a motion for leave to file an amended complaint (doc #21) so that she may join Mr.

Jenkins as a defendant.

# I.  FACTS

There is no factual dispute with respect to defendant's first argument for summary judgment, i.e. that plaintiff's equitable garnishment action is defective because Justin Jenkins is not named as a defendant as required by Missouri's equitable garnishment statute.   This argument will be ruled based on the following facts as set out by defendant:

1.  On December 30, 2011, Plaintiff Zacharie McDonald ("Plaintiff") filed suit against Justin Jenkins and Roto-Rooter Services Company ("Roto-Rooter") in the Circuit Court of Jackson County, Missouri, Case No. 1116-CV35042 (the "Underlying Action") alleging she sustained injury in a March 5, 2011, motor vehicle accident in Kansas City, Kansas, when a van owned by Roto-Rooter and driven by Mr. Jenkins turned from a gas station into her lane of traffic (the "Accident").

2.  On July 2, 2013, Roto-Rooter filed a Motion for Summary Judgment in the Underlying Action.

3.  On July 31, 2013, without responding to the Motion for Summary Judgment, and prior to any ruling by the Court, Plaintiff voluntarily dismissed Roto-Rooter.

4.  Plaintiff and Mr. Jenkins then executed an agreement pursuant to Section 537.065 of the Missouri Revised Statutes, and on October 2, 2013, Plaintiff took a $225,000 judgment against Mr. Jenkins in the Underlying Action (the "Judgment").

5.  The instant equitable garnishment action was originally filed on May 16, 2014, in the Circuit Court of Jackson County, Missouri, Case No. 1416-CF11717.

6.  Plaintiff contends that a policy of insurance issued to Chemed Corporation ("Chemed"), Policy No. BAP 9379363-06 with effective dates of April 1, 2010, to April 1, 2011 ("Policy"), provides coverage to Mr. Jenkins for the Accident, and she seeks to collect the Judgment entered in the Underlying Action pursuant to Section 379.200 of the Missouri Revised Statutes.

7.  Mr. Jenkins is not named as a defendant in this action.[1]

---

[1]The Court notes that plaintiff has filed a motion for leave to file an amended complaint so that she may join Mr. Jenkins as a defendant.

8.      Roto-Rooter is a named insured under the Policy.

9.      Mr. Jenkins is not a named insured under the Policy.

10.     Apart from the named insured, the Policy only provides coverage to individuals who have permission to operate a covered vehicle.

11.     The Policy contains the following relevant provisions:

**SECTION II – LIABILITY COVERAGE**

**A. Coverage**

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto" ...

> We have the right and duty to defend any "insured" against a "suit" asking for such damages …. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" … to which this insurance does not apply. …

**1.   Who Is An Insured**

> The following are "insureds":

> a.   You for any covered "auto".

> b.   Anyone else while using with your permission a covered "auto" you own, hire or borrow …

12.     On March 5, 2011, Mr. Jenkins was employed by Roto-Rooter as a Service Technician.

(Defendant's Suggestions in Support of Its Motion for Summary Judgment (doc #18) at 1-3)

While many additional facts set forth in Defendant's Suggestions in Support of Its Motion for Summary Judgment are undisputed, plaintiff has disputed some key facts relating to Mr. Jenkins' use of the van which preclude an entry of summary judgment on defendant's second argument for summary judgment, i.e. that Mr. Jenkins was not insured under the policy because he

3

was not acting within the course and scope of his employment at the time of the accident and was not, therefore, a permissive user of the van. Specifically, the Court finds the following key facts set forth by defendant to be disputed:

13.     Roto-Rooter employees were permitted to use Roto-Rooter company vans solely for company business.[2]

14.     Absolutely no personal mileage was allowed in the use of Roto-Rooter company vehicles.[3]

* * *

16.     Mr. Jenkins did not perform any work for Roto-Rooter on the day of the Accident.[4]

* * *

20.     Service Technicians were not allowed to receive additional assignments on days they were not scheduled to work without prior approval by

---

[2]However, in its reply brief, defendant states "Mr. Jenkins was not prohibited, while in the course of performing work for Roto-Rooter during his regularly scheduled shift, from stopping for cigarettes or food." (Defendant's Reply Suggestions in Support of Its Motion for Summary Judgment and Response to Plaintiff's Statement of Additional Material Facts (doc #28) at 1)

[3]However, in its reply brief, defendant states "Mr. Jenkins was not prohibited, while in the course of performing work for Roto-Rooter during his regularly scheduled shift, from stopping for cigarettes or food." (Defendant's Reply Suggestions in Support of Its Motion for Summary Judgment and Response to Plaintiff's Statement of Additional Material Facts (doc #28) at 1)

[4]While Mr. Jenkins may not have ended up performing any work for Roto-Rooter on the day of the Accident, Jenkins provided the following deposition testimony on March 24, 2015, which evidences his intent to perform work for Roto-Rooter on that date:

Q.     And you were—well, tell me what you were going to do before this accident occurred.

A.     Oh, man.   You know, what I was going to do was go down to the shop and pick up some chemical.

Q.     Okay.   And were you also attempting to get a few jobs?

A.     Of course.   That was my main intention, I was in uniform, I was dressed.

(Doc #26-1, Deposition of Justin Jenkins, p. 10, ll. 6-14)

4

management.[5]

\* \* \*

22.    Mr. Jenkins had inquired about additional work and was told not to come in on the day of the Accident, as there was no extra work available.[6]

---

[5]Defendant cites the affidavit of Frank Castillo, the General Manager of the Kansas City branch of Roto-Rooter Services Company, in support of this fact.   Justin Jenkins, however, provided the following deposition testimony on March 24, 2015, which contradicts this fact:

    Q.    If you wanted extra work outside of your regularly-scheduled shift, did that require any kind of manager approval?

    A.    Not to my knowledge, no.

(Doc #26-1, Deposition of Justin Jenkins, p. 60, ll. 17-20)

    Q.    But to your understanding, a time outside of your regularly-scheduled shift, you simply logged into etrace the same as you would have during your regularly-scheduled shift?

    A.    Uh-huh.

    Q.    There was no separate process where a manager had to sign you in or the dispatcher had to do anything to allow you to work outside of your scheduled shift, to your knowledge?

    A.    I mean, to my knowledge, no.

(Doc #26-1, Deposition of Justin Jenkins, p. 73, ll. 7-16)

    Q.    And to your understanding, you didn't need any manager approval to work, so you wouldn't have needed to talk --

    A.    No.

    Q.    -- to any of those individuals?

    A.    I mean, they got a guy coming in to do extra work.

(Doc #26-1, Deposition of Justin Jenkins, p. 78, ll. 6-12)
[6]Defendant cites the affidavit of Frank Castillo in support of this fact.   Justin Jenkins, however, provided the following deposition testimony on March 24, 2015, which contradicts this fact:

5

* * *

(Defendant's Suggestions in Support of Its Motion for Summary Judgment (doc #18) at 3-5)

The following facts which were set forth by plaintiff, some of which are controverted by defendant, further preclude an entry of summary judgment on defendant's second argument for summary judgment:

> 1.    Mr. Jenkins was not prohibited from using the van to run personal errands such as stopping for lunch or to buy cigarettes.[7]

> Q.    And you were never instructed not to go into work on that particular day, were you not?

> A.    No.

> Q.    And no one told you that you didn't have permission to operate that van –

> A.    No.

(Doc #26-1, Deposition of Justin Jenkins, p. 19, l. 22 – p. 20, l. 2)

> Q.    If you were specifically told do not come in today by Roto-Rooter management, would you have come into Roto-Rooter headquarters?

> A.    Of course not.

(Doc #26-1, Deposition of Justin Jenkins, p. 102, ll. 3-6)

[7]Defendant states it would admit this fact if it read:   "Mr. Jenkins was not prohibited, while in the course of performing work for Roto-Rooter during his regularly scheduled shift, from stopping for cigarettes or food."   (Defendant's Reply Suggestions in Support of Its Motion for Summary Judgment and Response to Plaintiff's Statement of Additional Material Facts (doc #28) at 1)   As set forth below, plaintiff contends that he routinely performed work for Roto-Rooter outside his regularly scheduled shift:

> Q.    Your normal hours – were your normal hours during the week?

> A.    I worked seven days a week, you know.   Tried to.

> Q.    Wasn't unusual for you to work on the weekends?

> A.    No, not at all.

6

2.      Mr. Jenkins was wearing his work uniform when the collision occurred on March 5, 2011.

3.      On March 5, 2011, Mr. Jenkins was on his way to the Roto-Rooter home office to pick up chemicals and to see if he could get a job assignment when the collision occurred.

*   *   *

5.      No one ever instructed Mr. Jenkins that he didn't have permission to drive his van to pick up chemicals on March 5, 2011.[8]

---

Q.      Okay.   And was it unusual for you to pick up chemicals on the weekends?

A.      No.

Q.      Did you have to pick up chemicals between the hours of 8:00 and 5:00 p.m. or could you do it any time you wanted?

A.      I mean, you could go down there any time you wanted to.

(Doc #26-1, Deposition of Justin Jenkins, p. 11, ll. 8-22)
[8]While defendant denies this fact citing to the Affidavit of Frank Castillo which provides:   "… Mr. Jenkins asked if he could work on March 5, 2011, and I instructed him that he was not authorized to do so," (doc #18-10 at 2, ¶11), the following deposition testimony of Mr. Jenkins supports the fact, thus creating a factual dispute:

Q.      … no one ever told you you didn't have permission to operate that vehicle on Saturday March the 5th, did they?

A.      No.
(Doc #26-1, Deposition of Justin Jenkins, p. 18, ll. 21-24)

Q.      Okay.   So again, as it relates to this permissive use issue, no one ever denied you permission to drive into the workplace on –

A.      No.

Q.      -- that day?

A.      No, not at all.

Q.      You may or may not have been on the job, but no one said don't drive your vehicle into work; right?

7

6. After the collision on March 5, 2011, Mr. Jenkins was never disciplined for using the company van in violation of company policy.

\* \* \*

(Plaintiff's Response to Defendant's Motion for Summary Judgment (doc #26) at 3-4)

## II.    DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is granted when the pleadings and evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The nonmoving party may not rest upon allegations or general denials, but must come forward with specific facts to prove that a genuine issue for trial exists. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The Court must review the facts in the light most favorable to the party opposing the motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts. See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

A.    Requirement That Justin Jenkins Be Joined as a Defendant

In support of its argument that plaintiff's equitable garnishment action is defective because Justin Jenkins is not named as a defendant as required by Missouri's equitable garnishment statute, defendant states:

A.    No.

Q.    And you had to drive your vehicle … even though it may have been not on company time, you had to drive your car to work, did you not?

A.    Right.

(Doc #26-1, Deposition of Justin Jenkins, p. 94, ll. 11-25)

8

4.      In the instant action, Plaintiff seeks coverage for the judgment in the Underlying Action under a policy of insurance issued by Zurich to Chemed Corporation, Policy No. BAP 9379363-06 with effective dates of April 1, 2010, to April 1, 2011 (the "Policy"), pursuant to Section 379.200 of the Missouri Revised Statutes.

5.      However, Missouri's equitable garnishment statute does not permit Plaintiff to bring a direct action against Zurich only, but rather requires that the defendant-insured in the Underlying Action be joined as a party.   Mo. Rev. Stat. § 379.200; *see also Prendergast v. Alliance General Ins. Co.*, 921 F. Supp. 653, 655 (E.D. Mo. 1996)(citing *Glover v. State Farm Fire and Cas. Co.*, 984 F.2d 259, 260 (8th Cir. 1993)(applying Missouri law)).

6.      Neither Roto-Rooter nor Mr. Jenkins is named as a defendant in this action.   The Petition in the instant case is therefore, as a matter of law, defective and does not properly state a claim against Zurich.   *See id.*   Because the time set by the Court for amending the pleadings or adding additional parties has expired, the cause must be dismissed.

(Defendant's Motion for Summary Judgment (doc #17) at 2)

The pertinent statute provides:

Upon the recovery of a final judgment against any person … by any person … for loss or damage on account of bodily injury … or damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company … and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment. …

Mo.Rev.Stat. § 379.200.

While defendant is correct in its assessment that federal courts have found the insured defendant in the underlying action is an essential party to an action brought pursuant to this statute, there is some question as to whether Missouri state courts would require the insured defendant to be named in statutory garnishment proceedings commenced under section 379.200.  See Glover v. State Farm Fire & Cas. Co., 984 F.2d 259, 261 (8th Cir. 1993)("there is some doubt whether

9

Missouri courts require joinder of the judgment debtor in a § 379.200 action, despite the seemingly clear statutory language to that effect"); <u>Mazdra v. Selective Ins. Co.</u>, 398 S.W.2d 841, 845-46 (Mo. 1966)(observing that under § 379.200, insured tortfeasor was not an "indispensable party" because her rights would not be affected by the instant suit); <u>Rodgers-Ward v. American Standard Ins. Co.</u>, 182 S.W.3d 589, 591 (Mo. Ct. App. 2005)(plaintiffs filed equitable garnishment action under § 379.200 against insurer (not insured) following default judgment in underlying lawsuit against insured tortfeasor); <u>Ingram v. Shelter Mut. Ins. Co.</u>, 922 S.W.2d 854, 855 (Mo. Ct. App. 1996)(plaintiffs filed equitable garnishment action under § 379.200 against insurer (not insured) following judgment in underlying lawsuit against insured tortfeasor).

Plaintiff McDonald has filed a motion to amend to join Mr. Jenkins as a defendant in this case. While the time for joining additional parties has expired,[9] the rules provide for the modification of a scheduling order "for good cause."[10] Further, the rules provide that "[t]he court should freely give leave [to a party to amend its pleading] when justice so requires."[11] The Court finds good cause for the modification of the deadline for joining a party and that justice requires granting plaintiff leave to amend her pleading. Plaintiff McDonald initially filed this lawsuit in state court. Plaintiff states that she did not name Mr. Jenkins in this lawsuit because she interpreted the statute as giving her the option to name the defendant debtor and/or the insurance carrier. (Plaintiff's Motion for Leave to File Amended Petition Pursuant to Federal Rule 16(b) (doc #21) at 3) Given the question as to whether Missouri state courts require the insured defendant to be named in a garnishment proceeding commenced under section 379.200, the Court finds it appropriate to grant plaintiff an opportunity to join Mr. Jenkins as a party defendant where

---

[9]The Scheduling and Trial Order set forth October 27, 2014, as the deadline for filing a motion to join additional parties. (Doc #13 at 1)
[10]<u>See</u> Rule 16(b)(4), Federal Rules of Civil Procedure.
[11]<u>See</u> Rule 15(a)(2), Federal Rules of Civil Procedure.

defendant Zurich American Insurance Company is responsible for removing the case to a court which has interpreted the statute to require Mr. Jenkins as a party defendant.

In plaintiff's response to defendant's motion for summary judgment, plaintiff argues that if she is allowed to amend her petition to join Mr. Jenkins, a Missouri resident, the case must be remanded to state court as diversity jurisdiction will no longer exist.[12]  (Doc #26 at 7)   Defendant Zurich American Insurance Company contends that adding Mr. Jenkins as a defendant will not destroy diversity jurisdiction as Mr. Jenkins was an Arkansas resident at all relevant times.   (Doc #28 at 7-8)   As defendant's argument was made in a reply brief, the Court has no further briefing on this issue from plaintiff.

    B.    <u>Justin Jenkins as a Permissive User of the Van</u>

In support of its argument that Justin Jenkins was not insured under the policy because he was not acting within the course and scope of his employment at the time of the accident and was not, therefore, a permissive user of the van, defendant states:

> 7.    Moreover, even if Plaintiff's action was procedurally proper, there is no genuine dispute and Zurich is entitled to judgment as a matter of law that the Policy does not provide coverage for the judgment in the Underlying Action.

> 8.    The policy only provides coverage to the named insured—Roto-Rooter—or additional individuals who have Roto-Rooter's permission to operate a covered vehicle.

> 9.    Roto-Rooter employees are not permitted to use Roto-Rooter company vans for personal business.

> 10.    Mr. Jenkins was not scheduled to work on the day of the Accident, had not been assigned any work by Roto-Rooter, and did not perform any work for Roto-Rooter.

> 11.    Mr. Jenkins had a regular weekly work schedule established by Roto-Rooter, and the Accident occurred at a time outside the hours established in that schedule.

---

[12]No such argument was made in plaintiff's motion for leave to file an amended petition (doc #21).

12.     Roto-Rooter required its technicians to be logged in to its tracking system 45 minutes before starting work, and to be logged in while on work time or on-call time.   Mr. Jenkins was not logged in at the time of the Accident.   His time tracking records showed no activity on the day of the Accident.

13.     Mr. Jenkins did not have permission to use the van on the day of the Accident because he was not driving the van for company business.

14.     There is no genuine dispute that the Policy provides no coverage for the judgment in the Underlying Action for that reason.

(Defendant's Motion for Summary Judgment (doc #17) at 2-3)

The court finds that there is a genuine issue of material fact as to whether Mr. Jenkins was a permissive user of the van,[13] thus precluding an entry of summary judgment for defendant on plaintiff's claim under the policy.   Viewing the facts in the light most favorable to plaintiff, it appears that Mr. Jenkins was on his way to the Roto-Rooter home office to pick up chemicals and to see if he could get a job assignment when the collision occurred.   (See Plaintiff's Fact No. 3, supra)   Although not scheduled to work on that date, Mr. Jenkins regularly worked hours outside of his scheduled shift.   (See footnote 4, supra)   No one ever instructed Mr. Jenkins that he was not to work on that date.   (See footnote 3, supra)   No one ever instructed Mr. Jenkins that he did not have permission to drive his van to pick up chemicals on that date.   (See Plaintiff's Fact No. 5 and footnote 3, supra)   Mr. Jenkins was never disciplined for using the company van in violation of company policy.[14]   (See Plaintiff's Fact No. 6, supra)   Given these facts, a jury could find that Mr. Jenkins was using the van with Roto-Rooter's permission.[15]

---

[13]The issue of permissive use of a vehicle is a question of fact.   See Nautilus Ins. Co. v. I-70 Used Cars, Inc., 154 S.W.3d 521, 528 (Mo. Ct. App. 2005).

[14]Despite a company policy which provided that the consequence for using a Roto-Rooter vehicle for personal business was automatic termination of employment.   (See Roto-Rooter Services Service Technician's Guide, doc #18-10 at 25)

[15]While defendant contends that an employee must be using the employer's motor vehicle in the course and scope of his employment to be considered a permissive user, the cases cited by

III.    CONCLUSION

Based on the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment (doc #17) is denied.   It is further

ORDERED that Plaintiff's Motion for Leave to File Amended Petition Pursuant to Federal Rule 16(b) (doc #21) is granted.   Plaintiff shall file her amended pleading forthwith.   It is further

ORDERED that because the issue of the Court's jurisdiction following Mr. Jenkins' joinder has been raised by plaintiff, but not fully briefed, plaintiff is directed to file a brief within fourteen days from the date of this Order on the effect of Mr. Jenkins' joinder on diversity jurisdiction.   Defendant Zurich American Insurance Company is directed to file a response to plaintiff's brief within fourteen days of its filing.


_____/s/ Sarah W. Hays_____
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE

---

defendant for this proposition go to the issue of whether the employer is liable under the doctrine of respondeat superior rather than the issue of permissive use under an insurance policy.   (See Defendant's Suggestions in Support of Its Motion for Summary Judgment (doc #18) at 11, 13-14) Roto-Rooter's liability to plaintiff is not at issue in this case.